IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES STRADER,

          Plaintiff,

          v.

JOANNE B. BARNHART
Commissioner of Social Security,

          Defendant.

CV 04-890 ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, James Strader ("Strader"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #11).

For the reasons set forth below, the decision of the Commissioner is reversed and remanded for an award of benefits.

## PROCEDURAL BACKGROUND

Strader initially filed an application for benefits on August 22, 2001, alleging disability since April 7, 2000, due to injuries to his back, hands and heels. His application was denied initially and upon reconsideration. On February 12, 2003, a hearing was held before an Administrative Law Judge ("ALJ"). After obtaining consultative examinations, a second hearing was held on June 17, 2003.

In a decision dated August 25, 2003, the ALJ found Strader was not entitled to benefits. On May 13, 2004, the Appeals Council denied Strader's request for review, making the ALJ's decision the final decision of the Commissioner. Strader now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

2 - OPINION AND ORDER

USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## **DISABILITY ANALYSIS**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR § 404.1520(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404,

Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR § 404.1520(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR § 404.1520(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR § 404.1520(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Strader had not engaged in substantial gainful activity since the alleged onset of his disability on April 7, 2000.

At step two, the ALJ found Strader had the medically determinable severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease, carpal tunnel syndrome, and plantar fascia.

At step three, the ALJ found that Strader's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Strader was not fully credible and retained the residual functional capacity to perform a limited range of light exertion work, occasionally lifting 20 pounds, frequently lifting 10 pounds, with a sit, stand, and walk option, but with limited ability to perform gross manipulation.

Because Strader is a younger individual between the ages of 45 and 49 and has a GED and no transferable skills, the ALJ found at step five that Strader can work at such jobs as a parking lot attendant, cashier, and ticket checker. As a result, he found Strader not disabled within the meaning of the Act.

## DISCUSSION

Strader contends that the ALJ erred by: (l) rejecting evidence that Strader met the criteria for disability based on Listing 1.02 or 1.04; (2) failing to include limitations related to incontinence in the hypothetical question to the VE; and (3) failing to include limitations related to pain in the hypothetical question to the VE.

### I. Evidence of Disability Based on Listing 1.02 or 1.04

At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations Part 404. The Listing of Impairments ("the List") describes specific impairments of each of the major body systems

"which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 CFR § 404.1525. If a claimant meets or equals a listed impairment, he or she will be found disabled without further inquiry. *See* 20 CFR § 404.1520(d).

> The List describes the characteristics of each impairment. The description includes the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment, claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairments, or, if a claimant's impairment is *not* listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526.

*Tackett,* 180 F3d 1094, 1099 (9th Cir 1999).

Frank McBarron, MD, an independent Medical Examiner ("ME"), testified at the first hearing that "[i]f you combine all of this, I have the feel[ing] he equals [Listing] 102 [regarding major dysfunction of a joint]. [Listings] 103 and 104 are where in all his [*sic*], I think [Listing] 102 very carefully, he equals [Listing] 102." Tr. 443.[1]

Rheumatologist Ronald C. Fraback, MD, examined Strader in May 2002 and May 2003. In May 2003, Dr. Fraback opined that Strader's condition "would appear to meet item A[2] [in Listing 1.04C regarding disorders of the spine] under the social security regulations. . . . I cannot say that this results in an inability to ambulate effectively, however." Tr. 381.

Listings 1.02 and 1.04C both require that the claimant's impairments result "in inability to ambulate effectively, as defined in 1.00B2b" which provides as follows:

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

[2] Dr. Fraback's description of "item A" is actually item C.

6 - OPINION AND ORDER

> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about ones's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. (Italics in original)

Strader contends that he is unable to ambulate effectively. However, Dr. Fraback, as noted above, found to the contrary. Dr. McBarron opined that Strader equaled the severity of Listing 1.02, but did not specifically address Strader's ability to ambulate.

William L. DeBolt, MD, another ME, testified at the continuation of the hearing. According to Dr. DeBolt, Strader's limitations neither met nor equaled in severity any listed impairment. Dr. DeBolt diagnosed "multilevel neuroradiculitis without radiculopathy. That means without paralysis, without lose [*sic*] of protective movement or ambulation." Tr. 452. He added that "the listing requires the person to have actual paralysis or non-use. And he doesn't have that." Tr. 459.

The ALJ concluded that:

> While Dr. McBarron opined that Mr. Strader's impairment might have medically equaled criteria of the Listing of Impairments since his alleged onset date and maybe up to a year, he was not certain as to the actual duration. In any event, the entire evidence did not sustain this conclusion. On the other hand, Dr. DeBolt testified that no treating or examining physician has reported findings similar in severity to those listed for any impairment in the above referenced section of the Listing of Impairments. This opinion is clearly sustained by the record. Therefore, based on the testimony of Dr. DeBolt and the entire evidence, I find Mr. Strader's impairments, either singly or in combination, do not meet or medically equal criteria in Appendix 1, Subpart P, Regulations Part 404.

Tr. 15-16.

The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F3d 1035, 1043(9th Cir 1995). Here, the examining doctor, Dr. Fraback, opined that Strader's limitations "would appear" to meet Listing 1.04C, except for the requirement that the limitations result in the inability to ambulate effectively. Dr. Fraback's opinion is contradicted by non-examining Dr. McBarron's assertion that Strader's limitations met Listing 1.02 which includes the limitation with respect to ambulation. Dr. McBarron, in turn, is contradicted by non-examining physician Dr. DeBolt.

The ALJ noted that "Dr. Fraback could not say that this resulted in inability to ambulate effectively," Tr. 20, and accepted Dr. DeBolt's opinion, rather than Dr. McBarron's opinion, as better supported by the record. "When there is conflicting medical evidence, the [Commissioner] must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F3d 947, 956 (9th Cir 2002) *quoting Matney v. Sullivan,* 981 F2d 1016, 1019 (9th Cir 1992). Given the conflicting medical evidence as to Strader's ability to ambulate, the ALJ did not err in finding that Strader's limitations did not meet or equal in severity a listed impairment.

## II. Limitations Arising From Incontinence

Strader contends that the ALJ erred by failing to include limitations arising from incontinence in the hypothetical question to the VE. Strader testified that "if I sit for any length of time my lap goes numb, front and back. This whole frontal area. . . . It effects how long I can sit. In other words, it goes complete [sic] numb where I can't feel anything . . . and basically it effects my sphincter control." Tr. 3421. Strader testified that "basically if I walk I lose bowel control or sphincter control. I leak constantly. . . I take morphine which helps control my consistency of my stool. So if I have any type of running stool I leak, but if it's very thick I don't have too much problem. . . . " Tr. 422. Strader's limited range of motion means that after a bowel movement or accident he can only cleanse himself by showering. Tr. 427-28.

The medical records indicate that Strader reported bowel and bladder incontinence to at least nine examining physicians between June 2001 and November 2003 (Tr. 176, 257, 263, 296, 302, 315, 320, 326, 370, 414.) Dr. McBarron opined that the fusing occurring in Strader's lower spine could cause loss of bowel and bladder control. Tr. 439. Dwight W. Freeman, MD, diagnosed cauda equina syndrome [impairment of the bundle of spinal nerve roots below the first lumbar] with bowel and bladder dyskinesea [difficulty in performing voluntary movements]. Tr. 414. Dr. DeBolt opined that the possibility of colon or prostate disease should be evaluated before he would attribute Strader's incontinence to nerve impairment. Tr. 454.

The ALJ did not address this evidence. Instead, he stated that :

> In reference to Mr. Strader's alleged problems with incontinence, I find of particular interest that during both hearings before me, he did not require any break for going to the restroom. In this regard, I find no reason in the record to sustain any related limitation. In fact, there are no examining sources of record who have found ob-

9 - OPINION AND ORDER

> jective findings in support of any limitation based on this alleged problem. In general, no other limitations proposed at the hearing have been included as part of Mr. Strader's residual functional capacity because the entire evidence lacks adequate findings in their support.

Tr. 17.

The ALJ found that Strader and his wife were "generally credible to the extent that the limitations imposed by Mr. Strader's severe impairments preclude him to [*sic*] perform his past relevant work as a longshoreman and auto mechanic. However, these subjective allegations have not provided reliable evidence in support of a conclusion that all types of work activities are precluded." Tr. 16-17.

The testimony of Drs. McBarron and Freeman constitute evidence of an underlying impairment of Strader's spine and a causal relationship between that impairment and some level of incontinence. Therefore, the ALJ had to articulate clear and convincing reasons to reject Strader's testimony if there is no evidence of malingering. *Smolen v. Chater,* 80 F3d 1273, 1281-82 (9th Cir 1996). " [T]he causal relationship [must] be a reasonable inference, not a medically proven phenomenon." *Id* The fact that Strader was able to sit through two 45 minute long hearings without using the bathroom does not constitute a convincing reason to reject his testimony regarding incontinence.

The VE testified that an individual "who is unable to control bowel and bladder function to the extent that [he] periodically urines [*sic*] in his pants" would be unable to maintain employment. Tr. 472. Accordingly, it is unnecessary for the court to address Strader's final argument that the ALJ failed to include limitations related to pain in the hypothetical question to the VE.

## III. Remand For Payment of Benefits is Appropriate

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert. denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*

The second and third prongs of the test often merge into a single question: whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id* at 1178 n2.

Strader has established that he can no longer preform his past relevant work, and this case turns on whether the Commissioner has met her burden at step five of proving that Strader retains the ability to perform other work in the national economy. The VE testified that a person with incontinence, such as Strader, would be unable to sustain employment. Tr. 472. As a

11 - OPINION AND ORDER

result, Strader cannot work on a regular and sustained full-time basis and, therefore, is disabled. The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F3d 968 (9th Cir 2000). *See also Reddick v. Chater,* 157 F3d 715, 729 (9th Cir 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

Accordingly, the court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits to Strader as of April 7, 2000.

## **ORDER**

For these reasons, the court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

Dated this 26th day of April, 2005.

s/ Janice M. Stewart_____
JANICE M. STEWART
United States Magistrate Judge